UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIZITO OKOROANYWANU,<br><br>**Plaintiff**<br><br>v.<br><br>MV TRANSPORTATION, INC.,<br><br>**Defendant** | CASE NO. 1:20-CV-0584 AWI SKO<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. No. 14) |

This is an employment discrimination case brought by pro se Plaintiff Kizito Okoroanywanu ("Okoroanywanu") against his former employer, MV Transportation ("MVT"). The active complaint is the Second Amendment Complaint ("SAC"), which contains four claims under 42 U.S.C. § 2000e et seq. ("Title VII") for disparate impact, hostile work environment, disparate treatment, and retaliation. Currently before the Court is MVT's Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion will be granted in part and denied in part.

**RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). Further, courts

are obligated where a litigant is pro se, particularly in civil rights cases, to construe pleadings liberally and to afford the pro se litigant the benefit of any doubt. Garmon v. County of L.A., 828 F.3d 837, 846 (9th Cir. 2016). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon, 828 F.3d at 842.

**FACTUAL BACKGROUND**

From the SAC, from July 2018 to October 2018, Okoroanywanu worked as an Operations Manager for MVT in its Selma, California office. At MVT, Okoroanywanu oversaw day-to-day operations, including route design, mobile tablet system configuration, and route development. Okoroanywanu had worked in the transit industry for over a decade and has been recognized as a leader in management and received multiple awards and recognitions in his field.

In July 2018, Marc Anya ("Anya") was the General Manager at MVT's Selma office and was Okoroanywanu's immediate supervisor. Scott Germann ("Germann") was a Regional Vice President for MVT and was Anya's immediate supervisor.

Anya allegedly routinely made derogatory comments based on race, including comments about black people. For example, on multiple occasions, Anaya told Okoroanywanu, "I will not hire that Black guy because he does not have a car." On another occasions, Anaya told Okoroanywanu that "That Black guy does drugs – just look at him – I trashed his application." Anya also said that "They are lazy."[1]

On one occasion, Anya told Okoroanywanu that he (Anaya) did not like the black female receptionist who worked at the front desk of the Selma office. When asked what the receptionist had done, Anaya told Okoroanywanu that he could not say but that he was going to fire her because she was trouble. When asked again what the receptionist had done, Anaya said that there was something in her background and that he was going to put in a request to fire her. Two days later, the receptionist was fired. After she was fired, the receptionist called Okoroanywanu and warned him to be careful because Anaya "does not like black people working for him." Anaya also told Okoroanywanu that he (Anaya) was not afraid to fire an operations manager to send message and that he had done so at MVT's Tulare office.

On one occasion, Anaya and Germann had a closed door meeting with Okoroanywanu. Anaya and Germann told Okoroanywanu to avoid speaking to a contractor because, even though Okoroanywanu had a good relationship with the contractor, Germann wanted the contractor to

---

[1] Given the context and liberal pleading standards applicable to pro se complaints, see Garmon, 828 F.3d at 846, the Court reads the "They" of this allegation to refer to black individuals.

3

1  develop a relationship with Anaya.  Okoroanywanu was informed that if he continued to speak
2  with the contractor, actions would be taken.  To comply, Okoroanywanu hid behind doors to avoid
3  seeing the contractor.

4        In September 2018, Okoroanywanu learned of boxes of employee benefit packages that
5  had been left in the dispatch office.  The dispatcher said that Anaya dropped them off and told her
6  to pass the packages out to the drivers that same day, even though it was Friday afternoon.
7  Okoroanywanu asked Anaya about the packages and he was informed that they needed to go out
8  that day.  When Okoroanywanu asked why the packages had arrived at the Selma office so late,
9  Anaya said that the packages had been left at the Hanford office.  Anaya became agitated and used
10  profanity while blaming MVT's corporate office for the delay.  Anaya threatened to quit his job,
11  but Okoroanywanu pleaded with Anaya to stay and offered to help distribute the packages.
12  Okoroanywanu got the packages and made arrangements with each driver to receive the package
13  and sign up on-line.  Okoroanywanu continued these efforts through Friday, Saturday, and Sunday
14  and got all the drivers signed up.  However, following inquiry from the MVT corporate office
15  about the progress of the benefit package distribution process, Okoroanywanu learned through an
16  e-mail string that Anaya had blamed Okoroanywanu for the delay in distribution.

17        On another occasions, Okoroanywanu gave a company tablet device to Anaya to give to a
18  driver who was friends with and lived close to Anaya.  Anaya did not do so, and when asked by
19  Okoroanywanu about the tablet, Anaya said that he did not have it and walked away.

20        Anaya made derogatory and threatening statements to Okoroanywanu on an almost a
21  weekly basis.

22        On October 2, 2018, Okoroanywanu was called to Anaya's office.  In the office was
23  another MVT employee.  Anaya told Okoroanywanu that he had to let Okoroanywanu go.  When
24  asked why, Anaya responded that Okoroanywanu had put contractors' names on an MVT system.
25  Okoroanywanu denied that he had done so, that he had seen the names as well, and assumed that
26  Anaya had put the names there to communicate with the contractor.  Anaya replied that he had a
27  computer "screen grab" which showed Okoroanywanu putting in the names.  Anaya refused to
28  show Okoroanywanu the screen grab and told him to turn over his keys and badge and leave.

1    Okoroanywanu was not provided with any termination related documents and MVT's HR
2 department did not attempt to call him or oversee the termination.  Anaya sent a text message to
3 all employees stating that had had fired Okoroanywanu.
4    On May 21, 2019, Okoroanywanu filed a charge of discrimination with the EEOC ("the
5 EEOC Charge"), which was submitted on a pre-printed EEOC form.  See Doc. No.1 at ECF p.15.
6 In the section entitled "Discrimination Based On," two boxes are checked:  "Race" and "National
7 Origin."  Id.  The boxes for *inter alia* "Retaliation" and "Other" are not checked.  Id.  In the box
8 entitled "Date(s) Discrimination Took Place," the "Earliest Date" indicated is "10-2-18" and the
9 "Latest" is "10-2-18."  Id.  The box for "Continuing Action" is not checked.  Id.  Finally, under
10 the "Particulars" section, three typed paragraphs appear:

> I.  I was hired on or about Sept. 4, 2018, as an Operations Manager.  My supervisor was Marc Anaya.  Shortly after I was hired, Scott German informed me that I would likely be promoted to General Manager within a couple of months.  On or about Oct. 2, 2019 [sic], Mr. Anaya discharged me.  I understand that others not in my protected classes were not similarly treated.
>
> II.  I was told that I was discharged because I put contractor information in the company's messaging system.  No other reason was given to me for the treatment.
>
> III.  I believe that I was discharged because of my Race, Black, and National Origin, Nigerian, in violation of [Title VII].

17 Id.
18    On January 22, 2021, the EEOC sent a letter to Okoroanywanu regarding the results of its
19 investigation.  See id. at ECF p.23.  The EEOC was unable to conclude that the evidence
20 established a violation of law.  See id.  The EEOC stated that the evidence indicated that
21 Okoroanywanu had poor work performance, that he failed to meet MVT's expectations, and thus,
22 he was terminated.  Id.  Further, the EEOC stated that MVT provided a non-discriminatory reason
23 for its actions.  Id.
24    Okoroanywanu filed his Complaint in this Court in April 2020, and, after being granted *in*
25 *forma pauperis* status, filed a First Amended Complaint in May 2020.  See Doc. Nos. 1, 3, 4.  In
26 July 2020, the First Amended Complaint was screened and dismissed with leave to amend.  See
27 Doc. No. 5.  On September 17, 2020, Okoroanywanu filed the SAC.  See Doc. No. 7.
28    On December 22, 2020, the Magistrate Judge issued a Findings and Recommendation

("F&R") that recommended dismissing all claims against Anaya and Germann but allowing all other claims to proceed against MVT. See Doc. No. 9. On January 27, 2021, this Court adopted the F&R and terminated Anaya and Germann from this case. See Doc. No. 10.

## DEFENDANT'S MOTION TO DISMISS

*Defendant's Arguments*

MVT argues that all claims alleged should be dismissed.

First, the SAC's claims based on disparate impact and retaliation should be dismissed because Okoroanywanu failed to timely exhaust his administrative remedies. Okoroanywanu's charge with the EEOC did not include any allegations concerning disparate impact or retaliation, rather the EEOC charge alleges that he was terminated because of his race and national origin. It is unlikely that a disparate impact or retaliation claim would have reasonably been investigated by the EEOC based on this charge.

Second, the SAC does not plausibly allege any Title VII violations. For example, the SAC does not plead any facts that suggest that he was terminated because of his national origin, rather, the SAC pleads only a conclusion or assumption that Okoroanywanu was terminated because of a protected classification. Further, there are no allegations that Okoroanywanu was performing his job competently or that other managers of different races were treated more favorably. Moreover, the SAC actually acknowledges that MVT did not engage in any adverse employment action because of any protected characteristic of Okoroanywanu. The SAC acknowledges that Okoroanywanu was terminated because he gave non-MVT employees access to MVT's internal messaging system. That reason is non-discriminatory. Also, as to retaliation, the SAC fails to plausibly plead causation or that Okoroanywanu engaged in any protected activity.

Third, all claims against Anaya and Germann should be dismissed because there is no individual liability under Title VII. The court previously ordered that claims against the individuals could not proceed.

*Plaintiff's Opposition*

Okoroanywanu filed no opposition or response of any kind.

6

*Discussion*

MVT's motion to dismiss addresses claims made against it and claims made against Anaya and German. MVT's motion also contains a procedural component regarding exhaustion and a pleading component relating to the plausibility of the claims made. The Court will address each of these aspects separately.

1. Individual Defendants

As discussed above, on January 27, 2021, the Court adopted an F&R and dismissed individual defendants Anaya and Germann from the case. See Doc. Nos. 9, 10. The Court adopted the F&R and dismissed Anaya and Germann because it is well established in the Ninth Circuit that supervisors and other employees cannot be liable under Title VII. Craig v. M&O Agencies, Inc., 496 F.3d 1047, 1058 (9th Cir. 2006). The F&R's analysis was based on the allegations made in the SAC. The docket reflects that Anaya and Germann were terminated from this case on January 27, 2021, in accordance with the Court's order adopting the F&R. Following the termination of Anaya and Germann, Okoroanywanu did not file a third amended complaint; the active complaint remains the SAC. Therefore, despite MVT's arguments, Anaya and Germann are not parties to this lawsuit and were not parties when MVT filed its motion to dismiss. Because Anaya and Germann have not been parties to this case since January 2021, there is no need to dismiss them a second time. MVT's motion to dismiss non-parties Anaya and Germann is not well taken and will be denied as futile.

2. Exhaustion

"Under Title VII, an aggrieved person wishing to bring a claim against an employer must exhaust administrative remedies by filing a charge with the [EEOC] or a qualifying state agency and receiving a right-to-sue notice." Scott v. Gino Morena Enters., LLC, 888 F.3d 1101, 1104 (9th Cir. 2018). A court's jurisdiction over Title VII claims depends on the scope of both the EEOC charge and the EEOC investigation. Sommatino v. United States, 255 F.3d 704, 709 (9th Cir. 2002); EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994). EEOC charges are construed with the "utmost liberality." Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2003); B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1100 (9th Cir. 2002). Generally,

discriminatory incidents that are not included in an EEOC charge may not be considered by a court unless the new claims are "like or reasonably related to the allegations contained in the EEOC charge." Shelley v. Geren, 666 F.3d 599, 606 (9th Cir. 2012); Green v. L.A. Cnty. Superintendent of Schls., 883 F.2d 1472, 1476 (9th Cir. 1989). New claims are "like or reasonably related to the allegations contained in the EEOC charge" if the "original EEOC investigation would have encompassed the [new claims]." Shelley, 666 F.3d at 606; Green, 883 F.2d at 1476. Therefore, courts may consider new claims if the claims are within the scope of the EEOC's actual investigation or the scope of an investigation which could reasonably be expected to grow out of the claimant's charge of discrimination would include the new claims. Freeman, 291 F.3d at 636; B.K.B., 276 F.3d at 1100. In determining whether a new claim can be litigated, courts should consider such factors as the alleged basis of discrimination, dates of discriminatory acts specified within the charge, identification of the perpetrators of discrimination, and any locations at which discrimination allegedly occurred; the crucial element of a claimant's EEOC discrimination charge is the factual statement contained in the claimant's charge. Freeman, 291 F.3d at 636; B.K.B., 276 F.3d at 1100. Courts should consider a plaintiff's civil claims to be reasonably related to allegations in an EEOC charge to the extent that those claims are consistent with the plaintiff's original theory of the case. B.K.B., 276 F.3d at 1100.

    a.  First Causes of Action – Disparate Impact

Under a disparate impact theory, the plaintiff must show that a facially neutral employment practice has a "significantly discriminatory" impact upon a group protected by Title VII. Robinson v. Adams, 847 F.2d 1315, 1320 (9th Cir. 1987); see also Freyd v. University of Or., 990 F.3d 1211, 1224 (9th Cir. 2021). A discriminatory intent is not necessary to prove disparate impact. Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 481 (9th Cir. 1981).

Here, Okoroanywanu's EEOC Charge does not mention the term "disparate impact," nor does the factual basis suggest that Okoroanywanu was terminated because of a neutral policy that operates more harshly on a protected group. Instead, the EEOC Charge alleges that Okoroanywanu was discharged because of his race (black) and national origin (Nigerian). This identifies disparate treatment, not disparate impact. See International Bro. of Teamsters v. U.S.,

431 U.S. 324, 335 n.15 (1977) (discussing differences between disparate treatment and disparate impact); EEOC v. Borden's Inc., 724 F.2d 1390, 1392 (9th Cir. 1984) ("The chief difference between [disparate treatment and disparate impact theories] is that disparate treatment involves discriminatory intent, whereas intent need not be shown in a disparate impact case."). There is nothing about the Charge that indicates to the Court that the EEOC would have reasonably been expected to investigate a disparate impact theory. Further, the Court is unaware of any evidence that indicates that the EEOC actually investigated policies that had a disparate impact on Okoroanywanu based on his race or national origin. In the absence of an opposition, the Court concludes that Okoroanywanu did not adequately exhaust his administrative remedies with respect to a disparate impact claim because such a claim is not included within his EEOC Charge and an investigation into disparate impact could not reasonably be expected to grow out of the EEOC Charge. See Goethe v. California DMV, 2008 U.S. Dist. LEXIS 16164, *18-*19 (E.D. Cal. Feb. 20, 2008) (finding that an EEOC charge that identified disparate treatment did not sufficiently encompass a disparate impact theory). Therefore, dismissal of the first cause of action without leave to amend is proper. See Sommatino, 255 F.3d at 709; Farmer Bros., 31 F.3d at 899.

          b.      Second Cause of Action – Hostile Work Environment

Title VII prohibits the creation of a hostile work environment that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment. Fuller v. Idaho Dep't of Corr., 865 F.3d 1154, 1161 (9th Cir. 2017). A hostile work environment exists when a plaintiff is subjected to unwelcome conduct due to his race, the conduct is sufficiently severe or pervasive that the conditions of employment are altered, the conduct is objectively and subjectively abusive, and the employer is liable for the conduct. Campbell, 892 F.3d at 1016-17; Fuller, 865 F.3d at 1161.

Here, the EEOC Charge does not use the term "hostile environment" and does not describe instances of unwelcomed and racially/national origin charged conduct. There is simply an allegation of a discharge because of race and national origin. It is true that the SAC alleges that Anaya made negative statements about "black people," and it is Anaya who is identified in the EEOC Charge as the person who discharged Okoroanywanu. However, the EEOC Charge identifies the discharge/termination as the discriminatory conduct at issue and the dates of

discriminatory conduct identified are limited to a single day – October 2, 2018, the date of termination. There is no suggestion of on-going conduct, conduct that lasted more than one day, or improper conduct beyond the termination. Given the information presented, the Court cannot say that a reasonable investigation of Okoroanywanu's EEOC Charge/alleged discriminatory discharge would have encompassed or reasonably be expected to grow to include a claim of hostile work environment. Further, the Court is unaware of any evidence that indicates that the EEOC actually investigated whether Okoroanywanu was subjected to a hostile work environment. The Court concludes that Okoroanywanu did not adequately exhaust his administrative remedies with respect to a hostile work environment claim because such a claim is not included within his EEOC Charge and an investigation into hostile work environment could not reasonably be expected to grow out of the EEOC Charge. Therefore, dismissal of the second cause of action without leave to amend is appropriate.[2] Sommatino, 255 F.3d at 709; Farmer Bros, 31 F.3d at 899.

### c.  Fourth Cause of Action – Retaliation

Title VII prohibits employers from discriminating against an employee because he has opposed prohibited practices under Title VII. Campbell v. State Dep't of Educ., 892 F.3d 1005, 1021 (9th Cir. 2018). A prima facie case of retaliation is established when a plaintiff shows that he suffered an adverse employment action because he engaged in activity protected by Title VII. See id.; Reynaga v. Roseburg Forest Prods., 847 F.3d 678, 693 (9th Cir. 2017).

Here, the EEOC Charge does not use the term "retaliation," and the only boxes checked in the "Discrimination Based On" section of the Charge are for "Race" and "National Origin," even thought there is a box for "Retaliation." Also, no protected activity is identified. However, the narrative section of the EEOC Charge states that Anaya discharged Okoroanywanu and the discharge was based on Okoroanywanu's race and national origin. In *Vasquez v. County of L.A.*, 349 F.3d 634, 645-46 (9th Cir. 2003), the Ninth Circuit held in part that one claim of retaliation would have grown out of the EEOC charge submitted, even though the EEOC charge did not

---

[2] The Court recognizes that MVT did not argue that the second cause of action was not adequately exhausted. However, the Court's review of the EEOC Charge and the SAC indicate that the second cause of action was not encompassed by the EEOC Charge. This means that the Court cannot entertain this claim. See Sommatino, 255 F.3d at 709; Farmer Bros., 31 F.3d at 899. If Okoroanywanu has contrary authority or additional information that shows the second cause of action was sufficiently exhausted, he may file a motion for reconsideration.

mention retaliation.  *Vasquez* explained:

> While the EEOC charge does not contain the relevant legal theory of retaliation, it does contain the relevant factual allegations.  The EEOC charge alleges that Berglund harassed Vasquez and that he was transferred out of turquoise cottage, *the same acts specified as retaliation in his claim*.  Because an investigation of the EEOC charge would likely have revealed Vasquez's earlier grievance against Berglund, a claim of retaliation could have "grown out of the charge."

Id. (emphasis added).

In this case, the focus of the EEOC Charge is clearly a discriminatory discharge by Anaya. It seems that a reasonable EEOC investigation would have focused on the termination, the reasons for the termination, and the circumstances surrounding the termination.  The SAC alleges that one act of retaliation was Okoroanywanu's termination.  Given the analysis of *Vasquez*, the Court finds that a retaliatory termination by Anaya could reasonably be expected to be part of the EEOC's investigation of Okoroanywanu's alleged discriminatory termination.  Therefore, dismissal of a retaliatory termination claim for failure to exhaust is inappropriate.  See id.; see also B.K.B., 276 F.3d at 1100.

While the Court finds that a retaliatory termination claim was adequately exhausted per *Vasquez*, there are other retaliatory acts identified within the SAC apart from termination. Nevertheless, Okoroanywanu's EEOC Charge is limited to complaining about his termination.  No other adverse actions are identified, nor is there any mention of any protected conduct by Okoroanywanu.  Further, the dates of discriminatory conduct in the EEOC Charge are limited to only the date of termination, even though the other acts of retaliation would have clearly predated the termination.  Because Okoroanywanu's other retaliation claims rest on a factual basis separate and apart from the termination, *Vasquez* does not control.  Without *Vasquez*'s rationale, the Court concludes that Okoroanywanu's other retaliation claims would not reasonably be expected to grow out of an investigation based on the EEOC Charge.  Further, there is no indication that the EEOC actually investigated other type of retaliation besides termination.  Thus, the Court concludes that Okoroanywanu did not adequately exhaust his non-termination retaliation claims.  Dismissal of those claims without leave to amend is appropriate.  See Sommatino, 255 F.3d at 709; Farmer Bros., 31 F.3d at 899.

11

### 3. Pleading Sufficiency

#### a. Third Cause of Action – Disparate Treatment

Title VII prohibits employment discrimination because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000). To allege a claim of disparate treatment, a plaintiff must make allegations that give rise to an inference of unlawful discrimination, either through allegations constituting direct evidence of, or through allegations that circumstantially demonstrate, discriminatory intent. See Freyd, 990 F.3d at 1228. Direct evidence is evidence that, if believed, proves discriminatory intent without inference or presumption. Vasquez, 349 F.3d at 640. A circumstantial showing of disparate treatment can be met through four prima facie elements: (1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. Reynaga, 847 F.3d at 690-91. An "adverse employment action" is one that "materially affects the compensation, terms, conditions, or privileges of employment." Campbell, 892 F.3d at 1012.

Again, pro se complaints are read liberally and all reasonable inferences are made in favor of the pro se litigant. See Kwan, 854 F.3d at 1096; Garmon, 828 F.3d at 846. So reading the SAC, the allegations show that MVT discriminated against Okoroanywanu on the basis of race in terms of office assignment, office furniture, and termination and that Latino co-workers were not treated in a similar fashion. The SAC also alleges that Okoroanywanu has over a decade of experience in transit management, has received multiple awards in his field, and quickly distributed benefits packages in a timely fashion despite errors from Anaya, MVT's corporate office, or both. These allegations are sufficient at this stage to reasonably infer that Okoroanywanu was competently performing his job. The SAC also alleges that Anaya routinely made derogatory comments based on race, including comments about "black people." One comment appears to indicate that Anaya said that "black people" are lazy. The SAC also alleges that Anaya took actions to prevent the hiring of a black person and that he caused the termination

of a black receptionist. That terminated receptionist later contacted Okoroanywanu and allegedly warned him about Anaya's attitude towards black employees. These allegations collectively are sufficient at this stage to raise an inference that Okoroanywanu's employment was terminated with a racially discriminatory motive.

MVT makes much of the SAC's allegations in which Okoroanywanu acknowledges that he was told that he was terminated because he gave a third party access to MVT's internal messaging system. MVT is correct that the SAC acknowledges that Anaya told Okoroanywanu that this was the reason for termination. However, the SAC also contains Okoroanywanu's denial that he was responsible for giving the third party access to MVT's system, in addition to the allegations discussed above that suggest a discriminatory motive. Simply relating what was told to Okoroanywanu does mean that Okoroanywanu is agreeing or conceding that this was the reason for his termination. Given the other allegations in the SAC, Okoroanywanu's mere recitation of what Anaya told him during the termination does not defeat Okoroanywanu's disparate treatment claim as a matter of law or make his allegations implausible.

That being said, there is a problem with the third cause of action. There is no doubt that termination is an adverse employment action, but the Court cannot say the same about office furniture or office assignment. Cf. Campbell, 892 F.3d at 1012 (discussing the term "adverse employment action"). The SAC indicates that Okoroanywanu was provided with an office and furniture, but that Latino workers were somehow given superior offices or furniture. For the Court to conclude that this practice constitutes an adverse employment action, additional allegations are necessary to show how and why the practices were truly adverse. As pled, there is no plausible claim based on office assignments or office furniture.

While the Court would normally grant leave to amend, the Court finds that amendment in this instance would be futile. As discussed above, the EEOC Charge complains about Anaya discriminatorily discharging Okoroanywanu on October 2, 2018. There is no discussion in the EEOC Charge of any other discriminatory conduct by Anaya or anyone else prior to October 2 and no discussion of any adverse conduct apart from termination. The Court cannot conclude that an EEOC investigation of the Okoroanywanu's Charge could reasonably be expected to expand into

claims regarding office furniture and office assignments. Further, there is no indication that the EEOC actually investigated office assignments and office furniture. Thus, a disparate treatment claim based on office assignments and office furniture has not been adequately exhausted. Dismissal of such disparate treatment claims must be without leave to amend. See Sommatino, 255 F.3d at 709; Farmer Bros., 31 F.3d at 899.

In sum, the Court finds that the SAC has adequately pled a disparate treatment claim for racial discrimination based on Okoroanywanu's termination. However, that is the only plausible claim under the third cause of action. While the discriminatory termination claim will not be dismissed, all other potential disparate treatment claim in the third cause of action will be dismissed without leave to amend.

      b.  Fourth Cause of Action – Retaliation

As indicated above, a prima facie case of retaliation is established when a plaintiff shows that he suffered an adverse employment action because he engaged activity protected by Title VII. See Campbell, 892 F.3d at 1021; Reynaga v. Roseburg Forest Prods., 847 F.3d 678, 693 (9th Cir. 2017). Proximity in the timing between protected activity and the adverse employment action, combined with knowledge of the employee's protected activity, may circumstantially support a finding of causation. See Raad v. Fairbanks N. Star Burough, 323 F.3d 1185, 1197 (9th Cir. 2003); Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987); Gunther v. County of Washington, 623 F.2d 1303, 1316 (9th Cir. 1979).

The Court previously adopted an F&R that had concluded that a plausible retaliation claim had been stated. Upon further review, however, the Court finds that dismissal is appropriate. While the Court is satisfied that an adverse employment action has been adequately identified, i.e. termination, the Court is not satisfied that protected activity or causation have been adequately pled. The SAC alleges that Okoroanywanu made formal and informal complaints about discriminatory conduct, but there are no factual allegations that explain to whom the complaints were made or, more importantly, about what precisely Okoroanywanu was complaining about. There are several actions identified in the SAC that could be the subject of a Title VII protected complaint, but it is not clear what exactly the subject of any complaint was. The SAC is simply

too ambiguous for the Court to conclude that Okoroanywanu made complaints that were protected by Title VII. Moreover, there is not an adequate link alleged between any protected activity and the termination. The SAC does not allege that Okoroanywanu was told anything by MVT or any MVT employee about any protected complaints/acts that he made, nor does the SAC adequately allege that the relevant decisionmakers behind the termination were aware of any protected complaints that Okoroanywanu may have made.[3] Therefore, additional factual allegations are needed to more precisely describe what kind of Title VII protected complaints were made by Okoroanywanu, and to support a causal link between Okoroanywanu's protected activity and his termination, in order to plausibly plead a retaliation claim. Because it is not clear that these shortcomings cannot be cured by amendment, the Court will dismiss the fourth cause of action with leave to amend.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Rule 12(b)(6) motion to dismiss (Doc. No. 14) is GRANTED as follows:
    a. The first and second causes of action are DISMISSED without leave to amend;
    b. Any claims under the third cause of action based on adverse conduct other than termination are DISMISSED without leave to amend;
    c. The fourth cause of action for retaliatory termination is DISMISSED with leave to amend;
    d. All other retaliation claims contained within the fourth cause of action are DISMISSED without leave to amend;
2. Defendant's Rule 12(b)(6) motion to dismiss is otherwise DENIED;
3. Within twenty-one (21) days of service of this order, Plaintiff may file a third amended complaint that is consistent with the analysis of this order;[4]

---

[3] Given the short period of employment, there is likely a sufficient proximity in the timing between any protected activity and the termination. The issue is whether the relevant decisionmakers had knowledge of Okoroanywanu's protected activity.

[4] Any amended complaint may make allegations that describe the actions of Anaya and Germann, but the amended complaint shall not include Anaya and Germann as actual defendants/parties to this action.

4.   If Plaintiff fails to timely file a third amended complaint, then leave to amend shall be automatically withdrawn without further notice, and Defendant shall file an answer within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated:   August 27, 2021                                              /s/ signature
                                                                SENIOR DISTRICT JUDGE